# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN L. BROWN, | : | |
|     PLAINTIFF | : | CIVIL ACTION LAW |
| | : | |
| v. | : | JURY TRIAL |
| | : | DEMANDED |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT OF | : | |
| CORRECTIONS, MICHAEL | : | |
| WENEROWICZ, HAROLD KERTES, | : | |
| JAMES MEINTEL, REED DAVY | : | |
| DOUGLAS BENNER, MARTIN KUZAR | : | |
| AND STEPHEN NOLL | : | |
|     DEFENDANTS | : | Electronically Filed |

## **COMPLAINT**

### JURISDICTION

1. A notice of right to sue for EEOC charge number 530-2012-01913 was issued by the U.S. Department of Justice on January 29, 2015, and was received on or about February 9, 2015; PHRC letter of right to sue was issued on May 8, 2015 for case no. 201201051.

2. This action is brought to redress violations of Plaintiff's rights as secured by 42 U.S.C. § 1983 in the nature of a violation of the First Amendment of the United States Constitution, Title VII of the Civil Rights Act of

1964, *as amended*, the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951, *et seq.*, and Pennsylvania Whistleblower Act, 43 P.S. §§ 1421 *et seq.* The United States District Court for the Middle District of Pennsylvania has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 2000, *et seq.* The United States District Court for the Middle District of Pennsylvania has supplemental jurisdiction over the pendant state claim[s] pursuant to 28 U.S.C. § 1367 (a).

VENUE

3.  The United States District Court for the Middle District of Pennsylvania is the proper venue for this cause of action by reason of the activities of the Defendants complained of herein having occurred within the geographical confines of this Court's jurisdiction.

PARTIES

4.  The Plaintiff, Dawn L. Brown, is a female, residing in Pennsylvania.

5.  Defendant Commonwealth Pennsylvania, Department of Corrections ("DOC" or "Department"), is an agency of the Commonwealth of Pennsylvania (hereinafter "Commonwealth").

6. Michael Wenerowicz, at all relevant times, Acting Deputy Secretary, Commonwealth of Pennsylvania, Department of Corrections, and acting under color of state law, and being sued in his individual capacity.

7. Harold Kertes, at all relevant times, an employee of Commonwealth of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

8. James Meintel, at all relevant times, an employee of Commonwealth of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

9. Reed Davy, at all relevant times, an employee of Commonwealth of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

10. Douglas Benner, at all relevant times, an employee of Commonwealth of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

11. Martin Kuzar, at all relevant times, an employee of Commonwealth of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

12. Stephen Noll, at all relevant times, an employee of Commonwealth

of Pennsylvania, Department of Corrections, acting under color of state law, and being sued in his individual capacity.

## BACKGROUND

13.	The Plaintiff was hired by the Defendant as a Corrections Officer I and assigned to SCI Camp Hill in July 2005.

14.	On or about October 30, 2009, the Plaintiff reported a sexual assault and sexual harassment committed by Sgt. Harmon.

15.	In January of 2010 the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC charge number 846-2010-19859; this was filed with the PHRC through the dual filing agreement with EEOC ) against Defendant Commonwealth alleging, among other things, she was retaliated against because she filed the complaint against Sgt. Harmon.

16.	Harmon remained the Plaintiff's direct supervisor and additional retaliatory harassment was meted out by Sgt. Harmon and management through May, 2010.

17.	As a result of the stress of working for Sgt. Harmon, the plaintiff became fearful, anxious and depressed.

18. To recover from her fear, anxiety and depression she used sick leave.

19. In May of 2010 the Plaintiff filed a complaint with the Defendant Commonwealth's Equal Employment Office alleging Sgt. Harmon continued to harass her and that management condoned the behavior.

20. In late June and early July of 2010, the plaintiff was absent due to surgery.

21. Because she did not have much sick leave she asked to borrow some of her husband's sick leave.

22. Borrowing of sick leave was an approved existing practice.

23. Defendant Commonwealth refused to allow the Plaintiff to borrow her husband's sick leave.

24. In July of 2010 an inmate convicted by a jury in which the Plaintiff was a juror, transferred to SCI Camp Hill.

25. Pursuant to Department of Corrections regulations that inmate was place in the Restricted Housing Unit (RHU) to protect the Plaintiff.

26. The regulations provide the inmate should have been transferred to another corrections institution.

27. Yet, in less than a week, in violation of the Department of Corrections regulations, the inmate was placed in the general population

where he had greater access to the Plaintiff.

28. When she learned of this, Plaintiff complained asserting she feared the Defendant Commonwealth was recklessly putting her life in danger.

29. Being fearful her employer was willing to subject her to danger, exacerbated her anxiety and depression.

30. The Plaintiff used sick leave to address her anxiety and depression.

31. The inmate remained in general population until he was transferred in September of 2010.

32. As a result she was placed in danger for several months.

33. In September of 2010 after surgery on her teeth, the Plaintiff was placed on pain medication.

34. Department of Corrections regulations prohibited reporting to work under the influence of pain medication.

35. The Plaintiff asked for two days off because of the medication, and had a doctor's certification to support her request.

36. The request was denied, but had been approved for corrections officers who had not filed discrimination complaints.

37. This denial contributed to the Plaintiff getting a one day

suspension.

38. In December of 2010 the Plaintiff reported to Defendant Commonwealth that a female corrections officer was having a personal relationship with, at least, five inmates; the Plaintiff did not know the names of the inmates.

39. To protect herself, the Plaintiff asked the Defendant Commonwealth to identify the five inmates involved.

40. In retaliation for filing her discrimination and retaliation complaints, Defendant Commonwealth refused to identify the inmates.

41. An investigation followed and ultimately the correction officer was discharged in 2011.

42. To date, Defendant Commonwealth refuses to identify the inmates.

43. In February of 2011, the Plaintiff, through her attorney, asked for a separation from an inmate who the Defendant Commonwealth knew planned to harm the Plaintiff.

44. The request was denied.

45. As a direct result of not knowing which inmates might seek to harm her, the Plaintiff became more fearful, anxious and depressed in her workplace.

46. In February of 2011 the Plaintiff was given a medical leave of absence.

47. In April of 2011 the Plaintiff's medical provider authorized her to return to work, provided she was not forced to work with certain corrections officers.

48. To accommodate the Plaintiff, the Defendant Commonwealth assigned the Plaintiff to the mail room as light duty.

49. In early July of 2011, contrary to her medical provider's direction and despite the absence of authorization from any medical professional, the Defendant Commonwealth ordered the Plaintiff to return to regular full duty to work with corrections officers, effective July 10, 2011.

50. Unbeknownst to the Plaintiff the Defendant Commonwealth caused her medical insurance coverage to be discontinued.

51. On July 7, 2011, the Plaintiff suffered a motorcycle accident.

52. When she sought to utilize her medical insurance she was informed that she was not covered, despite being a long-term employee.

53. The denial of medical insurance coverage was the direct result of administrative actions by the Defendant Commonwealth.

54. As a direct result of denying the Plaintiff medical insurance coverage she incurred over twelve thousand dollars in medical bills

55. In addition, the Plaintiff was denied Family Medical Leave Act (FMLA) leave due to the administrative decisions of the Defendant Commonwealth.

56. In December 2011, the Defendant Commonwealth acknowledged its actions incorrectly resulted in the denial of medical insurance coverage and the denial of FMLA leave.

57. The Plaintiff's medical provider cleared her to return to work (provided she did not work with six specified individuals) in July of 2011.

58. The Defendant Commonwealth refused to assign the Plaintiff to mail room or any other assignment which was separate from the specified six.

59. Other corrections officers on medical leave who had not filed discrimination complaints were permitted to continue on light duty assignments, such as the mailroom, for periods greater than that approved for the Plaintiff.

60. As a result the Plaintiff was not permitted to return to work until June 2012.

61. From June 2012 through November 2012 the Plaintiff complained of continuous acts of retaliation.

62. In October of 2012 the Plaintiff was given a three day suspension for not parking her motorcycle at a designated parking pad.

63. During the same period and currently, correction officers who have not filed discrimination complaints parked their motorcycles off of the parking pad without disciplinary action.

64. Plaintiff was given a ten day suspension without pay starting on March 28, 2013 for taking time off to recover from her bouts of anxiety; as noted above, stress from retaliatory working conditions caused severe anxiety and depression.

65. This was later reduced to a five day suspension.

66. The refusal to accommodate her disability (anxiety and depression) by punishing her for taking time off to recover were additional acts of retaliation.

67. In April and May of 2013, the Plaintiff earned over seven hundred dollars in overtime pay.

68. Using its failure to properly record her entitlement to FMLA leave, the Defendant Commonwealth demanded and collected over seven hundred dollars from the Plaintiff.

69. In November of 2013 the Plaintiff was given a five day suspension without pay for calling off and attempting to use FMLA leave on the grounds that she did not have enough working hours to use FMLA leave.

70. In fact, the Plaintiff had enough working hours to use FMLA leave.

71. As a direct result of the exacerbation of her anxiety and depression, the Plaintiff utilized paid leave to quell her mental conditions.

72. In May of 2014 the inmate who was convicted by a jury which included the Plaintiff as a juror returned to SCI Camp Hill.

73. He should have been put in RHU and transferred immediately, but remained in general population until late May of 2014, which, again, put the Plaintiff in danger for almost a month.

74. In November of 2014, one of the inmates who established a personal relationship with the female corrections officers that the Plaintiff reported returned to SCI Camp Hill because of a parole violation.

75. The Plaintiff was not notified.

76. When she discovered the inmate's return, the Plaintiff requested a separation.

77. The request was denied.

78. To create animosity toward her, the inmate told other inmates that the Plaintiff was a snitch.

79. Defendant Commonwealth knew the Plaintiff was working in the proximity of the inmate, but took no precautions to protect her.

80. The Plaintiff learned of the inmate's presence because she learned he married the corrections officer.

81. He was not moved until after the Plaintiff complained, In December of 2014.

82. A federal complaint was filed on May 15, 2015, related to these Claims, docketed at 1:15-cv-918.

## UNLAWFUL DISCHARGE

## COUNT ONE

83. Paragraphs 1 through 82 are incorporated herein by reference as though set forth in full.

84. In February 2015, Plaintiff was transferred to SCI Greene.

85. Prior to Plaintiff's transfer, she reported multiple issues of wrongdoing at SCI Camp Hill to Defendant's management, as specified hereinbefore.

86. Following Plaintiff's reports of wrongdoing, Plaintiff began to experience hostility and retaliation from Defendant's management.

87. Within a few weeks after Plaintiff's transfer to SCI Greene, inmates began to question Plaintiff about some of the wrongdoing that she had reported including but not limited to the employee who had sexual relationships with

inmates.

88. An incident report was on file in which an inmate declared he intended to harm the Plaintiff.

89. The Plaintiff requested separation from the inmate, but was denied.

90. Plaintiff was assigned to "G-Block" at SCI Green, which was a "D Code" block.

91. A "D-Code" block is a section of the prison reserved for severely mentally ill individuals who must be secured at all times.

92. In or about April of 2015, a particular inmate was assigned to G-Block although he was not a D-Code inmate and was actually a sex offender that had no reason to be assigned to Plaintiff's pod in G-Block.

93. The aforementioned inmate made inappropriate sexual comments to Plaintiff, threatened Plaintiff, and harassed Plaintiff in both a sexual and violent manner.

94. Plaintiff reported the inmate's aforementioned actions to Defendant's management and requested that the inmate be transferred pursuant to safety regulations.

95. The inmate was not transferred, but the Plaintiff's supervising Lieutenant told the Plaintiff, she was the problem because women didn't belong on that block, and he was moving her to the general population

96. The Plaintiff called the Superintendent to protest the move.

97. The Plaintiff met with the Superintendent and a representative from Human Resources (HR) department and complained that the failure to transfer this individual was a violation of Defendant's safety regulations.

98. The Superintendent told the Plaintiff she was being moved for her safety because an inmate has personal information on her.

99. Although she asked, DOC refused to identify the inmate or the information he had.

100. That same day the Plaintiff filed a complaint alleging discrimination with Defendant Commonwealth's human resources department.

101. These events aggravated the Plaintiff's depression and anxiety.

102. She took FMLA leave the next day.

103. Later that week she filed criminal charges against DOC with the Greene County District Attorney's Office.

104. On or about May 15, 2015, the Defendant sent the Plaintiff notice of a pre-determination hearing.

105. Plaintiff returned to work in early June with medical restrictions prescribed by her therapist.

106. The restrictions included limiting the Plaintiff to placement on "L" Block (a more secure block) and no overtime work.

107. Soon after returning to work, the Plaintiff filed a criminal complaint against DOC with the Cumberland County District Attorney's Office.

108. After thirty days the therapist lifted the overtime restriction.

109. DOC eliminated the light duty.

110. Another corrections officer who did not file complaints was permitted similar light duty for several years.

111. The Plaintiff filed a complaint online alleging a violation of the Americans with Disabilities Act on or about July 24, 2015.

112. The Plaintiff filed a Heart and Lung Act claim on or about July 27, 2015.

113. Defendant notified the Plaintiff of her termination effective July 31, 2015, by way of a letter signed by Defendant Wernerowicz.

114. Defendant's management claimed, among other things, that Plaintiff was terminated for an incidents that had taken place several months earlier, in or about December of 2014 and January of 2015.

115. Defendant charged the Plaintiff for fabricated offences and for acts similar to those committed by corrections officers who did not file complaints and were not disciplined or discharged.

116. Defendant Kertes issued the investigation report that wrongfully accused the Plaintiff of violating the social media regulations.

117. Defendants Davy, and Benner falsely accused the Plaintiff of engaging in misconduct.

118. Defendant Kuzar falsely accused the Plaintiff of refusing mandated overtime.

119. Defendant Meintel falsely accused the Plaintiff of leaving her post without permission.

120. Defendant Noll falsely accused the Plaintiff of not registering her handcuffs.

121. Plaintiff believes that Defendant's reason for terminating her employment is entirely pretextual and that she was actually terminated in retaliation for reporting wrongdoing within Defendant.

122. Plaintiff's employment was terminated from Defendant in retaliation for exercising her First Amendment rights by reporting wrongdoing at the state correctional facilities.

123. The employment practices, as specified hereinbefore, constituted a violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C § 2000, et seq., as amended,* and the Pennsylvania Human Relations Act, *43 Pa. C.S. § 951,* et seq.*,* and the Pennsylvania Whistleblower Act, *43 P.S. §§ 1421* et seq.

124. As a direct result of the intentional and willful violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et*

*seq., as amended*, the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, et seq., and the Pennsylvania Whistleblower Act, 43 P.S. §§ 1421 et seq. committed by the Defendant Commonwealth as specified hereinbefore, Plaintiff has lost wages, paid leave, FMLA leave, medical costs, and other compensation and has suffered embarrassment, humiliation, and mental anguish, to her great damage and loss.

125. As a direct result of the intentional and willful violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, the Pennsylvania Human Relations Act, *43 Pa. C.S. § 951,* et seq., and the Pennsylvania Whistleblower Act, *43 P.S. §§ 1421* et seq. committed by the Defendant Commonwealth, as specified hereinbefore, Plaintiff has incurred counsel fees and court and other costs in an effort to seek redress for the violations of her civil rights.

126. As a direct result of the intentional and willful violations of her rights under Title 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq*., committed by the Defendant Commonwealth, as specified hereinbefore, the Defendant is liable to Plaintiff, and the Plaintiff seeks compensatory damages for all losses suffered, and all counsel fees and all costs incurred by Plaintiff in this action for the deprivation and violation of her civil

rights.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against the aforementioned Defendant Commonwealth in an amount in excess of $250,000.00, including compensatory damages, interest, costs and delay damages, as well as any other relief the Court deems just and appropriate.

## COUNT TWO

127.   Paragraphs 1 through 126 are incorporated herein by reference as though set forth in full.

128   The employment practices, as specified hereinbefore, constituted a violation of *42 U.S.C. § 1983* in the nature of a violation of the First Amendment of the United States Constitution, and the Pennsylvania Human Relations Act*, 43 Pa. C.S. § 951,* et seq.

129.   As a direct result of the intentional and willful violations of her rights under 42 U.S.C. § 1983 in the nature of a violation of the First Amendment of the United States Constitution, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, et seq. committed by Defendants Wenerowicz, Kertes, Meintel, Davy, Benner, Kuzar, and Noll, as specified hereinbefore,

Plaintiff has lost wages, paid leave, FMLA leave, medical costs, and other compensation and has suffered embarrassment, humiliation, and mental anguish, to her great damage and loss.

130.  As a direct result of the intentional and willful violations of her rights under 42 U.S.C. § 1983 in the nature of a violation of the First Amendment of the United States Constitution, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq.* committed by Defendants Wenerowicz, Kertes, Meintel, Davy, Benner, Kuzar, and Noll, as specified hereinbefore, Plaintiff has incurred Counsel fees and court and other costs in an effort to seek redress for the violations of her civil rights.

131.  As a direct result of the intentional and willful violations of her rights under 42 U.S.C. § 1983 in the nature of a violation of the First Amendment of the United States Constitution, and, the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq.*, committed by Defendants Wenerowicz, Kertes, Meintel, Davy, Benner, Kuzar, and Noll, as specified hereinbefore, the Defendants are liable to Plaintiff, and the Plaintiff seeks compensatory damages and punitive damages for all losses suffered, and all counsel fees and all costs incurred by Plaintiff in this action for the deprivation and violation of her civil rights.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and

against the aforementioned Defendants Wenerowicz, Kertes, Meintel, Davy, Benner, Kuzar, and Noll, in an amount in excess of $250,000.00, including compensatory damages, punitive damages, interest, costs and delay damages, as well as any other relief the Court deems just and appropriate.

                                      Respectfully submitted,

                                      /s/Nathan C. Pringle, Jr.
Nathan C. Pringle, Jr.
Attorney I. D. Number 30142
3544 Progress Avenue
Suite 108
Harrisburg, PA 17110
(717) 541-0002 - Office
(717) 541-1270 - Fax
pringlelaw@comcast.net

January 26, 2016                    Attorney for Plaintiffs